(40 Misc. Rep. 46.)

### POTTER v. SHEFFER.

(Supreme Court, Special Term, Rensselaer County. February, 1903.)

1. INJUNCTION—REINSTATEMENT IN LABOR UNION.
   Plaintiff, a member of the National Guard, who had been expelled from a labor union for being such a member contrary to its rules, obtained a temporary injunction to restrain the union from refusing to grant him full membership and granting him a union card. It appeared that plaintiff was an apprentice, that he had never received any card other than an apprentice card, and that he had never been paid the wages of a journeyman. The union denied that he had ever been a full member or had a full membership card. *Held*, that the injunction should be vacated.

Action by William Potter against Frank C. Sheffer, president of Local Union, No. 62, of the Brotherhood of Painters, Decorators, and Paperhangers of America. Motion to vacate temporary injunction. Granted.

Yates & Grupe (Judson S. Landon, of counsel), for plaintiff.
Calvin E. Keach, for defendant.

HOWARD, J.   This action was brought against the defendant as president of Local Union, No. 62, of the Brotherhood of Painters, Decorators, and Paperhangers of America, to recover damages resulting from the loss of employment of the plaintiff because of his discharge from the employ of Sheffer & Barry, contracting or boss painters in the city of Schenectady, which discharge was occasioned by the service upon said Sheffer & Barry, by the Brotherhood of Painters, Decorators, and Paperhangers of America, on the 7th day of November, 1902, of the following notice:

"Local Union No. 62,

"Brotherhood of Painters and Decorators of America,

"[Seal impressed.]                    Schenectady, N. Y., Nov. 7th, 1902.

"Sheffer and Barry: Gentlemen.—This is to certify that Mr. William Potter was expelled from Local Union No. 62. Cause, being a member of the National Guard contrary to our rules as laid down in our National By Laws. And the members of Local Union No. 62 refuse to work with Mr. William Potter.                    Frank O. Sheffer, Prest.

"Douglas H. Pratt, Recording Secretary."

He also asks for a judgment of the court "forthwith admitting him to the enjoyment of membership in said Local Union No. 62, with all the rights, privileges, and benefits thereof, as if no debarment or expulsion had been attempted, and that a membership card or certificate be forthwith given him to such effect, and fully declaring the same," and "that the said act of attempted expulsion be declared null and void," and "that said local union be enjoined and restrained from treating him in any way, particular, or respect as not a member of said local union, and be enjoined from refusing to accord and grant to him any and every right, privilege, and benefit of said membership of said Local Union No. 62 in good standing, and from refusing to grant him a card of membership," and "that, pending the action, a preliminary order of injunction to the above effect be granted."

The plaintiff's attorney appeared before the court ex parte on the 4th day of December, 1902, and procured an injunction order restraining the said Local Union No. 62, and each and all the officers, members, delegates, etc., "from treating the plaintiff in any way, particular, or respect as not a member of said Local Union No. 62, and be and hereby are each and all enjoined from refusing to accord and grant him any and every right, privilege, and benefit to full membership to said Local Union No. 62 in good standing, and from refusing to grant him a card of membership therein." This is a motion on the part of the defendant to vacate the temporary injunction.

The plaintiff is 23 years of age, resides in the city of Schenectady, and is an able-bodied male citizen of the United States and of the state of New York. In the fall of 1900, according to his own affidavit, he joined Local Union, No. 62, of the Brotherhood of Painters, Decorators, and Paperhangers of America, "as a painter's apprentice," at that time being an apprentice, and uniting with the organization under its rules for the admission of apprentices. "At about the time of the entry of this plaintiff into said local union and his becoming a member thereof, he received the usual membership working

card, which was never surrendered by this plaintiff, and which was lost in some manner which deponent cannot now remember, and he has been unable, after careful and diligent search, to find the same. And deponent never asked for and never received any membership working card since that date. About May 12, 1900, he enlisted as a private in Company F of the Second Regiment of the National Guard of the State of New York, and has ever since been and still is such private." His wages, while employed by Sheffer & Barry, were for some time prior to November 11, 1902, and at that time, $2 per day. On November 7, 1902, said Local Union No. 62, by resolution, declared that the plaintiff should be, and thereby was, expelled from said union. The plaintiff alleges that the unincorporated association known as the "Brotherhood of Painters and Decorators of America" was, on December 7, 1894, merged in the corporation known as the "Brotherhood of Painters, Decorators, and Paperhangers of America," and that the constitution of the first-named association was adopted by the latter, and so remained until its revision in December, 1901, and that a copy of this constitution before revision was delivered to the plaintiff about the time he became a member of said union, as a copy of the constitution and by-laws both of said local union and of the national brotherhood. There was, however, an earlier revision, dated December 4, 1899. In the first-mentioned constitution, section 1 of article 7 reads as follows:

"Any person to be admitted to full membership in this brotherhood must be a painter, decorator or paperhanger engaged at the trade and competent to command average wages, not more than fifty years of age, except as hereinafter provided, and of good moral character and of sound health, and not afflicted with any disease or subject to any complaint likely to endanger life."

In the revision of December 4, 1899, section 1 of article 7, and in the revision of December, 1901, section 1 of article 8, the so-called "militia clause" is found added, which reads as follows:

"Provided, however, that he is not a militiaman, special police officer or deputy marshal in the employ of corporations or individuals during strikes, lockouts or other labor difficulties, and any member occupying any of the above positions shall be debarred from membership."

If the revision of December 4, 1899, is correct, and was the constitution of this local union at that time, this so-called "militia clause" was in force when the plaintiff joined the union as an apprentice, and had been for nearly a year. In his brief, the plaintiff's attorney states that he wishes to procure a decision upon the broad ground that the provision of the defendant's constitution in regard to the exclusion of a militiaman is void. To determine this motion, it is not necessary for the court to pass upon this particular question, or to declare whether it is void or otherwise, because the fundamental and primary object of a temporary injunction is to stop the mischief complained of pending the action, and keep things as they are until the final hearing, when the questions involved may be finally disposed of, and full justice done to all parties interested. Therefore the determination of this question should be left to the trial court, and in this controversy the court will only endeavor to discover whether the plaintiff

has established facts which entitle him to an order stopping the mischief pending the action.

In National Protective Association v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648, it was said:

"The propositions quoted recognize the right of one man to refuse to work for another on any ground that he may regard as sufficient, and the employer has no right to demand a reason for it. * * * Their reasons may seem inadequate to others, but, if it seems to be in their interest as members of an organization to refuse longer to work, it is their legal right to stop. The reason may no more be demanded, as a right, of the organization than of an individual, but, if they elect to state the reason, their right to stop work is not cut off because the reason seems inadequate or selfish to the employer or to organized society."

If this reasoning be correct—and there is no limit upon the causes which may actually exist or be assigned for the refusal of one man to work for another—the reason assigned in the notice served upon Sheffer & Barry would not be illegal, and would not give the plaintiff a cause of action. Plaintiff's attorney argues that the "militia clause" means "hostility to the public defense," and "trenches upon the efficiency of the military power," and makes the plaintiff "the champion of the sovereignty of the state." If called upon to pass upon this question upon the affidavits presented, I should be unwilling to assent to this. It may be thought by some that the "militia clause" in this constitution is ill advised and unwise, but, however this may be, nothing in the constitution, notice, or application blank leads me to conclude that the union is either "hostile to the public defense" or that it "trenches upon the efficiency of the military power of the state," or that, as against its attitude, the plaintiff is the "champion of the sovereignty of the state."

But it occurs to me that the one thing to discover, in order to determine whether or not this temporary injunction should be continued, is the question, was the plaintiff ever a member of the union in "full membership"? According to his own affidavits and statements, he received but one card of membership, and that was given to him as an apprentice. The transition from the condition of an apprentice member to full membership is not very plain. By the provisions of section 3 of article 9, "Apprentices on completion of their apprenticeship will be entitled to full benefits and all the rights of full membership by conforming to article 8 of section 1." At the time the plaintiff had completed his term of apprenticeship, and, according to the revision of December 4, 1899, when he commenced it, and became entitled to full membership, the "militia clause" was in section 1 of article 8, and barred him from becoming a full member. It does not appear from the affidavits nor from the constitution that there is any fixed ceremony to go through in order to pass from an apprentice member to journeyman member, and, if there is any, it does not appear that the plaintiff ever went through that ceremony or received any paper or card indicating that he is or ever was a journeyman or full member. If there is no such ceremony required, the fact still remains, according to the proof, that he never received any card other than the apprentice card, and it also appears,

if his own story is to be taken as true, that he joined the union under the provisions of the constitution which came down from the Brotherhood of Painters and Decorators, and at that time no card was issued to apprentices, which would tend to show that he never had a card of any description. The rules providing for the issuing of cards to apprentices are found only in the constitution of December, 1901. There was no provision in either of the earlier constitutions for the issuing of cards to apprentices, so that it seems hardly probable that he received a card at the time he joined.

It is said by the plaintiff's counsel that the defendant is estopped from denying that he was in full membership because of their notice, which assumed that he was in full membership, and which would have been unnecessary were he not a full member. Perhaps this would be true if all of these facts did not appear from the plaintiff's own showing, but they do. However, the notice does not go to the extent of admitting that the plaintiff was ever a full member, and, so far as it reads, it might as well apply to him as an apprentice member as a journeyman member. It is argued that, if the plaintiff joined the union as an apprentice before the "militia clause," he should not be barred by the insertion of it subsequently. This it is not necessary to determine. The question is, was he ever a member in full standing? because by the injunction the union is required to grant him and accord to him the privileges of full membership, and is required to grant him a full membership card, and if he was not a full member, no matter whether he should have been or not, he cannot by injunction be reinstated if he never were instated. And the defendant vigorously disputes his ever having been a full member or ever having had a membership card, and in support of this submits the affidavits of the recording secretary, the conductor, the financial secretary, and the treasurer of the union, showing that they have the care and custody of the books and papers, and are required to perform the duties connected with the matter of recording the entrance of members, the issuing of cards, the payment of dues, etc., in which they positively deny that the plaintiff was ever a full member or ever had a membership card. This seems to be again corroborated by a circumstance related by the plaintiff in his own affidavit, in which he states that he received only $2 a day. This appears to be 40 cents a day less than a journeyman was receiving, and would lead to the conclusion that he did not regard himself as a journeyman.

All this leads me irresistibly to the conclusion that the plaintiff has asked for more than he is entitled to, and that to attempt to reinstate him into a condition in which it is at least doubtful whether he ever was, and which might result in mixing and complicating the situation, would be unwise. It also occurs to me that this is a contest over a principle, that being to determine the validity of the "militia clause," and that the loss of the plaintiff's wages pending this controversy is a slight consideration compared with the real purposes of the suit.

The rights of the plaintiff must be clear in order to entitle him to a temporary injunction. I think, upon his own showing, his position is full of doubt, and the defendant's affidavits and statements add to

the doubt. This is an unusual lawsuit, and the plaintiff's rights, to my mind at least, are not entirely clear. Therefore the temporary injunction should be vacated, and an order may be entered accordingly, with $10 costs.

Temporary injunction vacated, with $10 costs.